IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BETTY JEAN PAUL,
     Plaintiff,

vs.                                          Case No.: 3:15cv123/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
     Defendant.
_____/

## **MEMORANDUM DECISION AND ORDER**

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 6, 7).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for  supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## I.    PROCEDURAL HISTORY

On October 5, 2010, Plaintiff filed an application for SSI, and in the application she alleged disability beginning July 1, 2007 (Tr. 15).[1]  Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on October 11, 2012, followed by a supplemental hearing held on May 13, 2013, after which the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (Tr. 15–25).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

## II.    FINDINGS OF THE ALJ

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on May 26, 2015 (ECF Nos. 9 & 10).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* Tr. 15–25):

(1)    Plaintiff has not engaged in substantial gainful activity since October 5, 2010, the application date;

(2)    Plaintiff has the following severe impairments: lumbago, generalized osteoarthrosis, depression, anxiety disorder, panic disorder, bilateral knee osteoarthritis, serous otitis, migraine headache disorder, and otitis media;

(3)    Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    After careful consideration of the entire record, the ALJ finds that Plaintiff has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b).  She can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk six hours and sit six hours but requires the option to sit/stand every 45 minutes.  She can frequently push and/or pull with the upper extremities, bilaterally, and frequently push and/or pull with the lower extremities, bilaterally.  Plaintiff can frequently balance, frequently stoop, occasionally kneel, occasionally crouch, occasionally crawl, and occasionally climb ramps and stairs.  She can never climb ladders, ropes, or scaffolds. She can continuously reach, bilaterally; continuously handle, bilaterally; continuously finger, bilaterally; and continuously feel, bilaterally.  She can tolerate occasional exposure to extreme cold.  She must avoid all exposure to unprotected heights and avoid all exposure to dangerous machinery.  She can perform simple routine tasks involving only simple work-related decisions with few workplace changes.  She can tolerate non-transactional interaction with the public and occasional interaction with supervisors.  She is able to sustain concentration and attention for two-hour periods with customary breaks.  She will have one unplanned absence per month.

(5)    Plaintiff is unable to perform any past relevant work;

(6)     Plaintiff was born on November 28, 1962, and was 47 years old, which is defined as a younger individual aged 18–49, on the date the application was filed. Plaintiff subsequently changed age category to closely approaching advanced age;

(7)     Plaintiff has a limited education and is able to communicate in English;

(8)     Transferability of jobs skills is not an issue in this case because Plaintiff's past relevant work is unskilled;

(9)     Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform;

(10)   Plaintiff has not been under a disability, as defined in the Act, since October 5, 2010, the date the application was filed.

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); see also Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.,

921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant

is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

A.   Personal and Employment History

At Plaintiff's October 11, 2012, hearing, she testified that her last job was at a convenience store in 2008 (Tr. 52).  She stated she had difficulties working there because she had trouble standing for the eight-hour shifts, during which her arthritic knees would swell up so bad that she would "have to go to in the bathroom, and sit on the floor with [her] feet up" (Tr. 54).  Plaintiff stated she used crutches that had been prescribed by an emergency room doctor about a year and a half prior to the hearing (Tr. 55).  She stated that she is unable to put all her weight on her knees, her knees give out, and she falls down (id.).  She provided that her knees have been giving out on her since she was 24-years-old and that she has had swelling in her lower extremities on a daily basis for the past ten years (Tr. 55–56).  She reported that her husband does the housework, cooking, and grocery shopping (id.).  Plaintiff stated that she can walk only five feet without crutches, that she can stand for only ten to fifteen

minutes at a time, and that she spends approximately eight hours on her couch each day (Tr. 56, 58).  She indicated that on a scale of one to ten her average pain level is a five, for which she takes pain pills and uses over-the-counter aspercreme and heating pads (Tr. 57).

B.    Relevant Medical History

The focus of Plaintiff's appeal is her contention that the ALJ failed to adequately consider the opinion of Board-Certified Family Nurse Practitioner Jill Elmore.  Nurse Practitioner ("NP") Elmore examined Plaintiff four times during 2012.  On a February 27, 2012, visit, Plaintiff reported bruising and swelling to the right dorsal foot, evidently from a foot or toe injury, such that it hurt to walk (Tr. 653–54).  Plaintiff also reported knee and back pain and that she was experiencing symptoms of a urinary tract infection ("UTI") (Tr. 653).  NP Elmore prescribed Ultram for the pain (Tr. 654).  During an April 10, 2012, visit, Plaintiff's complaint concerned a UTI (Tr. 652–53).  At a May 23, 2012, visit, NP Elmore noted Plaintiff's chronic low back pain and bilateral knee pain, which according Plaintiff worsened with exercise (Tr. 652).  During an October 9, 2012, visit, Plaintiff reported a sinus condition but also requested medication to take for "chronic lower back pain radiating into hips and arthritis" (Tr. 651).  Throughout these visits, NP Elmore noted Plaintiff diagnoses of

lumbago, "osteoarthrosis generalized involving multiple site," and "pain in joint involving ankle and foot" (Tr. 650–54).

NP Elmore completed a Functional Capacity Questionnaire on Plaintiff's behalf on October 9, 2012, the same day as Plaintiff's last recorded visit with her as described above.  NP Elmore indicated on this form that Plaintiff could stand or walk only 0–2 hours and that she could sit only 5 hours during an 8-hour day.  NP Elmore further provided that Plaintiff could not lift 10 or more pounds and could only rarely lift under 10 pounds and that she could rarely perform the tasks of fingering, grasping, handling, stooping, and crouching.  She provided that Plaintiff would miss more than 4 days of work per month on average because of her impairments (Tr. 636).

Plaintiff also mentions her visit to Sacred Heart Crestview Medical Clinic on April 29, 2010, where she complained of swelling in her legs that would keep her up at night (Tr. 302).  It was noted during this visit that Plaintiff's posture and gait were normal (Tr. 303).  Plaintiff also notes a March 11, 2008, visit to the North Okaloosa Medical Center where Plaintiff was seen for symptoms of the flu, but x-rays taken at the time revealed osteopenia with scoliosis in the thoracic spine (Tr. 538–41).

In contrast, the ALJ cited numerous treatment records relevant to Plaintiff's lumbago and osteoarthritis that showed her impairments to be much less debilitative

than what were contained in NP Elmore's findings.[3]   The ALJ noted Plaintiff's widespread complaints of bilateral knee pain, swelling and stiffness, and that they would sometimes "give out" or "pop."  He also noted her complaints of pain in her right shoulder, right elbow, left hip, feet, lower back, and hips (Tr. 21).  While the ALJ remarked upon Plaintiff's "mild bilateral knee crepitus, minimal bilateral knee effusion, decreased right shoulder range of motion, somewhat decreased lumbar range of motion, and slight lumbar tenderness," he also noted "her bilateral knee full range of motion and gross stability; normal posture and gait; ability to toe, heel, and tandem walk while using an examination table for balance; ability to move all extremities with equal strength; normal joint range of motion without swelling or deformities; non-tender spine; symmetric reflexes; lack of signs of extremity inflammation, discoloration, or deformity; symmetrical grip strength; and ability to perform fine manipulation such as removing and applying eyeglasses and using buttons on clothes" (*id.*) (citing medical reports commencing at Tr. 337, 471, 543, 554 and 638).

In his review of Plaintiff's medical records, the ALJ found that Plaintiff had reported "doing well overall; performing activities of daily living independently;

---

[3] The ALJ also reviewed Plaintiff's other impairments of depression, anxiety disorder, panic disorder, serous otitis, migraine headache disorder, and otitis media and incorporated his findings into his conclusion that Plaintiff was not disabled.  Plaintiff does not challenge the findings as to these impairments in her appeal, and this court's review of the ALJ's findings determines them to be well supported.  Thus, these impairments are generally excluded from the court's discussion.

having no communication difficulties; having friends that come to visit twice a month; and regularly cleaning, gardening, and doing yard work" (Tr. 23).

Although Plaintiff has asserted that she uses crutches "to help ambulate" (Tr. 638), in her June 2011 office visits with Peter Litchfield, M.D., her gait was observed to be "normal" (Tr. 544–45).  In a March 1, 2011, contact with Disability administrator Tonya Morris Spears, Plaintiff had been recently seen at the hospital when she fell and injured her left knee, but she reported that she was able to walk but not more than 30 feet, that she uses crutches to ambulate while inside the house, and that she uses a wheelchair when she shops in the grocery store (Tr. 221).  During an August 4, 2011, contact with Disability administrator Harriett Chandler, Plaintiff reported that she can walk 500 feet, shop for groceries, attend to her own personal care, lift 30 pounds, prepare meals, and that she was currently using no "assistive devices" (Tr. 244).

Consistent with these findings, the ALJ further noted that medical findings for Plaintiff throughout the file showed her impairments to be "modest" (Tr. 23 (citing exhibits 4F, 5F, 7F, 11F, 12F, 15F, 16F, and 20F as identified in the record)).  The ALJ also surveyed the various x-rays that were performed on Plaintiff, in particular the October 11, 2009, x-rays of her right elbow which did show a possible fracture; x-rays of her right shoulder showed "no acute process" (Tr. 400-01); x-rays taken on

January 4, 2011, on her left knee showed only "minimal change of osteoarthritis" and on her left hip showed "no acute findings" (Tr. 604).  On November 29, 2012, bilateral knee x-rays showed minimal degenerative changes with fairly well maintained joint spaces.

As for opinion evidence, the ALJ considered that the findings of state agency medical consultant Tonya Morris Spears, who completed a May 19, 2011, Physical RFC Assessment, were "generally consistent with the treatment and examination evidence," and so he placed significant weight on those findings (Tr. 23, 462–69). Spears determined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand for six hours as well as sit six hours during a normal, 8-hour workday; and was not limited in ability to push or pull (Tr. 463).  Spears found her to have no other limitations, and while she noted Plaintiff's statements that she had difficulty with prolonged ambulation, being able to walk no more than 30 feet at a time, Spears found these statements to be only "partially credible and attributable to the medically determinable impairments" (Tr. 467).  Spears found her reported severity of her symptoms to be out of line with the medical evidence, her daily living activities, and Plaintiff's own historical statements (*id.*; *see also* Tr. 553, 8/30/2011 Report of Thomas Peele, M.D. (affirming Spears' findings and noting that "recent

exams through 6/5/11 are very benign"), to which the ALJ also assigned significant weight).

The ALJ also considered a disability determination made on November 29, 2012, by Leo Chen, M.D., who specializes in orthopedic surgery (Tr. 637–49).  Dr. Chen noted Plaintiff to have a normal gait without crutches and an ability to toe, heel, and tandem walk, although she used the examination table for balance (Tr. 639).  He found there to be slight tenderness in her left lumbar paraspinal area and around her knees (Tr. 640).  He further reported that "[w]ith respect to her knees, [she] very well may have some meniscal pathology that would be best evaluated by an orthopaedic surgeon with possible radiographic studies including an MRI" (Tr. 640).

Dr. Chen then determined that Plaintiff could lift and/or carry up to 50 pounds occasionally, up to 20 pounds frequently, and up to 10 pounds continuously (Tr. 644).  Her found her able to walk for up to 20 minutes and stand for up to 10 minutes at a time, and able to sit for 2 hours at a time (Tr. 645).  He found her able to stand for 3 hours and walk for 2 hours during the course of an 8-hour day and sit for seven hours.  He did not find she needed a cane to ambulate (*id.*).  He found her able to reach, handle, finger, feel, and push or pull without limitations (Tr. 646).  While he provided that Plaintiff could not climb ladders or scaffolds, she could occasionally crawl and climb stairs or ramps, and she could frequently balance, stoop, kneel, and crouch (Tr.

647).  The ALJ found Dr. Chen's findings to be consistent within a reduced range of medium work, which he found to be "consistent with the examination findings and . . . partially consistent with the treatment evidence."  He therefore found Dr. Chen's conclusion to merit substantial but not significant weight (Tr. 23).

Last, the ALJ reviewed the Functional Capacity Questionnaire completed by NP Elmore on October 9, 2012, detailed *supra*, and found it merited no substantial weight.  While the ALJ found her to be a "treating nurse practitioner," and thus not an "acceptable medical source," he nevertheless evaluated her report under 20 C.F.R. § 416.927 and SSR 06-03p.  The ALJ found her conclusion that Plaintiff was  unable to perform even sedentary work on a regular and continuing basis to be inconsistent with the examination and treatment evidence, especially the objective evidence (Tr. 23).

On review of the above record evidence, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." (Tr. 21).  In detailing his RFC assessment, the ALJ found that Plaintiff was "able to perform a range of light and unskilled work" (Tr. 23), but had limitations impeding her ability to perform the full range of light work (Tr. 24).  Thus, the ALJ solicited testimony from a vocational

expert ("VE"), posing a hypothetical question based on his detailed RFC assessment (Tr. 64–65). The VE testified that a hypothetical person with Plaintiff's RFC could not perform her past relevant work but "would be able to perform the requirements of representative sedentary and unskilled occupations such as final assembler (Dictionary of Occupational Titles ("DOT") Code 713.687-018), a job with 4,500 positions existing statewide and 239,500 nationally; surveillance systems monitor (DOT Code 379.367-010), a job with 2,000 positions existing statewide and 87,800 nationally; and bonder (DOT Code 726.685-066), a job with 1,100 positions existing statewide and 259,000 nationally" (Tr. 24, 64-65).

## V.    DISCUSSION

Plaintiff contends the ALJ erred by failing to adequately consider the medical opinion of NP Jill Elmore. While Plaintiff separately claims that the ALJ erred by not finding Plaintiff to be disabled under the Medical Vocational Guidelines ("the Grids"), this argument is essentially a repetition of the first one since it is based largely on the premise that the ALJ did not place weight on NP Elmore's determinations regarding Plaintiff's functional limitations.

The core principle that Plaintiff recognizes she must override is that a nurse practitioner such as NP Elmore is not an "acceptable medical source" and therefore cannot give "statements . . . that reflect judgments about the nature and severity of

your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), and 404.1513; *see also* <u>Falge v. Apfel</u>, 150 F.3d 1320, 1324 (11th Cir. 1998) (permitting an ALJ to assign less weight to chiropractors and other nonmedical doctors than to medical doctors). Nonetheless, a non-acceptable medical source may provide useful evidence regarding the severity of an impairment or how it affects a claimant's functional abilities. SSR 06-03p. In fact, in situations it may be appropriate to give greater weight, even more weight than a treating source, to the opinion of a non-acceptable medical source who has seen the individual more often, has provided better supporting evidence, and/or has a better explanation for his or her opinion. *Id.*

In this case, however, there is little to warrant placing greater weight on NP Elmore's opinion under the above guidelines. First, it is true that NP Elmore had four medical visits with Plaintiff during 2012—and accordingly the ALJ identified her as a "treating" nurse practitioner, but this consideration is far outweighed by the fact that her conclusion that Plaintiff was unable to perform even sedentary work is simply unfounded in the medical record. Even NP Elmore's own medical impressions from Plaintiff's four visits with her are inconsistent with her findings, and moreover, the one page Functional Capacity evaluation form that NP Elmore completed provides no

explanation to even begin to square this inconsistency.  *See* <u>Spencer ex rel. Spencer</u> <u>v. Heckler</u>, 765 F.2d 1090, 1094 (11th Cir. 1985) (recognizing limited value of checked boxes on a form).  Trying to overcome this problem, Plaintiff contends that NP Elmore's medical findings of osteoarthrosis and lumbago are consistent with those of Dr. Chen, but as the Commissioner points out, the similarity ends with the medical diagnoses.  A diagnosis alone is insufficient to establish a social security disability; the crux of the matter is to measure the severity of an impairment "in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1547 (11th Cir. 1986); *see also* <u>Russell v. Astrue</u>, 331 F. App'x 678, 681 (11th Cir. 2009) (rejecting claim where plaintiff asserted that her high blood pressure caused her to be disabled but failed to point to any documentation in her medical records demonstrating how it might so cause disability); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (holding that "[t]o a large extent, [the plaintiff] questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation.  However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.").  As detailed *supra*, Dr. Chen's evaluations of the effects or the extent to which these impairments affect Plaintiff's ability to function

varied widely from NP Elmore's, and so the simple fact that both identified the same medical diagnoses does little to achieve Plaintiff's goal of lending more credence to NP Elmore's functional evaluations.

VI.    CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision to place no substantial weight on the evaluation by NP Elmore was not in error.  Likewise, the ALJ did not err by failing to incorporate those findings into the conclusion that Plaintiff favors, that is, that Plaintiff should have been evaluated under the sedentary work level on the Grids and therefore be found disabled.  The court otherwise finds the ALJ's decision to be supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at1560.

Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**, that this action is **DISMISSED,** and that the clerk is directed to close the file.

At Pensacola, Florida this 22nd day of March 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**